IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| MARK E.,[1] | Case No. 2:22-cv-01528-HL |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

_____

HALLMAN, United States Magistrate Judge:

Plaintiff Mark E. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Act. 42 U.S.C. § 401 *et seq*. For the following reasons, the decision of the Commissioner is AFFIRRMED.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

I. **Plaintiff's Application**

Plaintiff alleges disability based on a neural development disorder, ADHD, social anxiety, left knee replacement, and major dysfunction of joints. Tr. 340.[2] At the time of his

---

[2] Citations to "Tr." Are to the Administrative Record. (ECF 13).

alleged onset date, Plaintiff was forty-five years old. Tr. 36. He has completed high school and has a college degree, and past relevant work experience as a residential treatment counselor, DOT 187.167-186, a skilled occupation (SVP 6), generally performed at the sedentary level. *Id.*

Plaintiff protectively applied for DIB and SSI on January 27, 2020, alleging an onset date of August 27, 2018.  Tr. 25. His application was denied initially on September 18, 2020, and on reconsideration on February 3, 2021. *Id.*  Plaintiff subsequently requested a hearing, which was held on October 22, 2021, before Administrative Law Judge ("ALJ") Jesse Shumway. Tr. 37. Plaintiff appeared and testified at the hearing, represented by counsel; a vocational expert ("VE"), Mark Harrington, also testified. Tr. 25. On November 3, 2021, the ALJ issued a decision denying Plaintiff's claim.  Tr. 37. Plaintiff requested Appeals Council review ALJ Shumway's decision, which was denied on August 11, 2022. Tr. 7.  Plaintiff then sought review before this Court.[3]

## II.   Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability.  *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

---

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 16).

PAGE 3 – OPINION AND ORDER

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§

PAGE 4 – OPINION AND ORDER

404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

### III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since August 27, 2018, his alleged onset date" and met "the insured status requirements… through December 31, 2019." Tr. 28.

At step two, the ALJ determined that Plaintiff has the following severe impairments: lumbar degenerative disc disease, degenerative joint disease, left knee status-post total knee replacement, morbid obesity (BMI 43-51), ADHD, and mood disorder (20 CFR 404.1520(c) and 416.920(c)). *Id*.

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. *Id*.  The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff had the RFC "to perform a full range of sedentary work" with the following limitations:

> [H]e cannot climb ladders, ropes or scaffolds; he can occasionally perform all other postural activities; he can have no exposure to vibrations or hazards (e.g., unprotected heights, moving mechanical parts); he is limited to simple, routine tasks; he can have only superficial contact with the public, supervisors, and coworkers; and he needs a routine, predictable work environment with no more than occasional changes and simple decision-making.

Tr. 30.

At step four, the ALJ found that Plaintiff could not perform his past relevant work.  *Id*.

At step five—considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as an "[e]scort vehicle driver, DOT 919.663-022, an unskilled

occupation (SVP 2), generally performed at the sedentary exertional level, existing in approximately 34,700 jobs in the national economy"; "[d]ocument preparer, DOT 249.587-018 an unskilled occupation (SVP 2), generally performed at the sedentary exertional level, existing in approximately 16,800 jobs in the national economy"; and as a "[n]ut sorter, DOT 521.687-086, an unskilled occupation (SVP 2), generally performed at the sedentary exertional level, existing in approximately 5,300 jobs in the national economy." Tr. 37. Thus, the ALJ concluded that Plaintiff is not disabled. *Id*.

## DISCUSSION

Plaintiff argues that the ALJ's finding at step five was not supported by substantial evidence because, (1) the document preparer position requires a reasoning level that exceeds Plaintiff's RFC; and (2) the document preparer and nut sorter positions do not currently exist in the national economy. Pl.'s Br. 4-10, ECF 21. Defendant offers no direct rebuttal to Plaintiff's arguments. Instead, Defendant argues that, "[e]ven taking Plaintiff's arguments as true," the ALJ's step 5 finding continues to be supported by substantial evidence which shows that Plaintiff could perform the job of escort car driver, representing approximately 34,700 jobs in the national economy. Def.'s Br. 3, ECF 25. This Court agrees.

The VE testified that there are 34,700 escort car driver jobs in the national economy, Tr. 37, and the Ninth Circuit has held that 25,000 jobs constitutes a "significant" number. *See Gutierrez v. Comm'r Social Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014). The court in *Gutierrez* noted that it has "never set out a bright-line rule for what constitutes a 'significant number,'" *id*. at 528, and it cited cases which found the number of nationwide jobs "significant" where there were 64,000 jobs; 622,000 jobs; and 125,000 jobs. *Id*. at 529 (citations omitted). While noting that "those decisions involved higher numbers of nationwide jobs" and that 25,000 jobs was a "close call," the court held that 25,000 jobs "represents a significant number of jobs in several

PAGE 6 – OPINION AND ORDER

regions of the country." *Id*. Plaintiff relies on the court's "close call" language and argues that it is "misleading" for Defendant to rely on *Gutierrez* for the proposition that 25,000 jobs is a significant number. Pl.'s Reply 3, ECF 26. However, in recent unpublished opinions, the Ninth Circuit has cited *Gutierrez* in holding that a job existed in significant numbers where the number of jobs was greater than 25,000. *See Nix v. Kijakazi*, No. 22-55736, 2023 WL 7490052 (9th Cir. Nov. 13, 2023) (holding that "36,000 'Officer Helper' jobs . . . qualifies as a 'significant' number of jobs 'existing in the national economy'" and citing *Gutierrez*); *Andy v. Kijakazi*, No. 22-35934, 2023 WL 6620299 (9th Cir. Oct. 11, 2023) (holding that "28,100 jobs nationwide constitutes 'a significant number of jobs in several regions of the country' under *Gutierrez*"); *see also Valdez v. Comm'r of Soc. Sec.*, No. 1:22-CV-00477-EPG, 2023 WL 2636377 (E.D. Cal. Mar. 24, 2023) (citing and discussing the court's holding in *Gutierrez* that 25,000 nationwide jobs constitutes a significant number). Therefore, this Court finds that 34,700 escort car driver jobs is a significant number. *See Gutierrez*, 740 F.3d at 528-29.

Plaintiff argues that his case is closely analogous to *Valdez* and should be remanded in the same manner as *Valdez*. *See* 2023 WL 2636377, at *4. Like Plaintiff in this action, the plaintiff in *Valdez* alleged that two of the jobs identified by the VE were obsolete and disputed whether the remaining job—escort car driver—existed in significant numbers in the national economy. In *Valdez*, however, the VE testified that there were 22,000 escort car driver jobs nationwide, and while court noted that the Ninth Circuit found 25,000 jobs significant in *Gutierrez*, 740 F.3d at 529, it also acknowledged lower court decisions that found 21,100 jobs alone is significant; 11,850 jobs alone is significant; and 12,300 jobs alone is significant. *See Valdez*, 740 F.3d at *3 (citations omitted). Based on those cases, the court considered it a "close call" as to whether 22,000 national jobs for escort car drivers constitutes a significant number

PAGE 7 – OPINION AND ORDER

and concluded that the "ALJ should have the opportunity to address . . . in the first instance" whether 22,000 jobs significant and remanded the case to the Commissioner. *See id.* at *4. In contrast, when the obsolete jobs in this case are removed from consideration, it is not a "close call" as to whether the 34,700 remaining jobs as an escort driver represent a significant number of jobs in the national economy. Thus, *Valdez* does not compel this Court to remand this case for further administrative proceedings.

Last, Plaintiff challenges the VE's testimony that there are 34,000 escort driver jobs available in the national economy and argues that the VE's testimony "suffers from an 'indicia of unreliability.'" Pl.'s Br. 9 (citing *Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020)). However, Plaintiff did not question the VE's job numbers at any point during the administrative proceedings, and the Ninth Circuit has held that, "when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2018). Plaintiff was represented by counsel during the administrative proceedings and does not dispute that his attorney failed to challenge the VE's job numbers either before the ALJ or the Appeals Council. Like the claimant in *Shaibi*, Plaintiff "provides no explanation . . . for his failure to raise the issue during the administrative proceedings," *id.* at 1108—despite the opportunity and ease of doing so. *See id.* at 1110 (noting that an attorney need not cross-examine an expert on the spot with "alternative job calculations" and emphasizing that "[i]t is enough to raise the job-numbers issue in a general sense before the ALJ" to preserve the issue); *see also* Tr. 80 (transcript of hearing in which Plaintiff's attorney tells the ALJ that he has no questions for the VE in response to the ALJ asking if he has any questions). Because Plaintiff failed to preserve his challenge the VE's job

estimate numbers, he has waived that argument on appeal. *See Shaibi*, 883 F.3d at 1109; *cf. Wischmann v. Kijakazi*, 68 F.4th 498, 506 (9th Cir. 2023) (noting that the plaintiff "preserved his challenge to the VE's job-number estimates by asking the VE during the hearing how he had calculated the estimates for two of the jobs and the data source used for his estimates and by presenting contrary job-number estimates to the Appeals Council, which the Appeals Council considered and made part of the record") (citing *Shaibi*, 883 F.3d at 1109; *White v. Kijakazi*, 44 F.4th 828, 831–32, 837 (9th Cir. 2022) (citing *Shaibi* and noting that the plaintiff's attorney "cross-examined the VE, asking her about the source of the estimated job numbers" and submitted alternatives numbers in writing to the Appeals Council)).[4]

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, this Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this 7th day of May, 2024.

_____
ANDREW HALLMAN
United States Magistrate Judge

---

[4] Even if Plaintiff provided an alternative job number for the position of escort car driver—which he did not do—such evidence would not constitute significant probative evidence that the ALJ must address unless Plaintiff followed the same methodology that the VE used in testifying that there are 34,700 escort car driver nationwide jobs. *See Wischmann*, 68 F.4th at 506 (noting that an ALJ has a duty to address a conflict in job-number evidence where the claimant submits "significant probative" evidence that was "produced using the same methodology as that used by the VE") (citing *White*, 44 F.4th at 837); *Tobeler v. Colvin*, 749 F.3d 830, 834 (9th Cir. 2014) (noting that an ALJ need not discuss evidence that a lay witness is "not competent" to provide).

PAGE 9 – OPINION AND ORDER